2013 COA 93

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Craig Lamonte POINDEXTER,**
**Defendant–Appellant.**

**Court of Appeals No. 09CA0434**

Colorado Court of Appeals,
Div. VII.

Announced June 20, 2013

John W. Suthers, Attorney General, John D. Seidel, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Adam Mueller, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE BERNARD

¶ 1 In Colorado, a person commits the crime of second degree burglary if that person illegally enters the dwelling of another with the intent to commit therein a crime against another person or property. § 18–4–203(1), C.R.S.2012. This appeal presents the issue whether the crime of obstructing a peace officer, § 18–8–104(1)(a), C.R.S.2012, qualifies as a crime against another person or property. We conclude that, under the circumstances here, it does not. As a result, we reverse and vacate the conviction and sentence of defendant, Craig Lamonte Poindexter, for burglary.

¶ 2 Defendant also appeals the judgment of conviction and sentence entered on the jury verdicts finding him guilty of first degree aggravated motor vehicle theft, vehicular eluding, obstructing a peace officer, and two habitual criminal counts. We affirm the judgments and sentences as to those counts.

## I. Background

¶ 3 Defendant and another man accosted a woman and stole her car. Defendant drove the car while police officers gave chase. Eventually, defendant leapt from the moving car. He ran to an apartment building, and he broke into the building to hide from the police.

¶ 4 After defendant was convicted, and after the trial court found beyond a reasonable doubt that defendant had twice previously

been convicted of felonies, the trial court sentenced him to (1) concurrent eighteen-year prison terms for aggravated motor vehicle theft and second degree burglary; and (2) a nine-year prison term for vehicular eluding, a six-month term for obstructing a peace officer, and a six-month term for criminal mischief, which were all to be served concurrently with the sentences for aggravated motor vehicle theft and second degree burglary.

## II.  Analysis

### A.  The Burglary Conviction Must Be Vacated

■ ¶ 5 Defendant contends that his conviction for second degree burglary must be vacated because it was based on a crime, obstructing a peace officer, that was not a crime against another person or property. Under the circumstances of this case, we agree.

¶ 6 We review this issue de novo because it involves the interpretation of statutes. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo. 2000).  When interpreting a statute, our goal is to determine, and then give effect to, the legislature's intent. *People v. Hickman*, 988 P.2d 628, 634 (Colo.1999).  We begin with the statutory language itself, giving words and phrases their plain meanings. *People v. Novitskiy*, 81 P.3d 1070, 1073 (Colo.App.2003). We read the statute as a whole, and we do so in a way that gives consistent and sensible effect to all the statute's parts. *Devora v. Strodtman*, 2012 COA 87, ¶ 9, 282 P.3d 528. We avoid constructions that lead to absurd results. *Town of Erie v. Eason*, 18 P.3d 1271, 1276 (Colo.2001).

¶ 7 As relevant here, section 18–4–203(1) provides that

[a] person commits second degree burglary, if the person knowingly breaks an entrance into [or] enters unlawfully in ... a building or occupied structure with intent to commit therein *a crime against another person or property*.

(Emphasis supplied.)

¶ 8 Here, the prosecution charged that defendant burglarized an apartment building with the intent to commit therein the crime of obstructing a peace officer under section 18–8–104(1)(a).  That section provides:

A person commits obstructing a peace officer ... when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority....

¶ 9 Defendant argues that obstructing a peace officer is not "a crime against [a] person or property" but is, instead, an offense against governmental operations.  Accordingly, he asserts, obstructing a peace officer does not fall within the class of crimes designated by the legislature as possible predicates to burglary because it is not a crime against another person or property.

¶ 10 The prosecution contends that obstructing a peace officer constitutes a crime against a person—the peace officer—because it threatens the officer's person, and is, therefore, a proper basis for a conviction of second degree burglary.  Under the circumstances of this case, we agree with defendant.

### 1.  Definitions and Common Law Principles

¶ 11 The General Assembly has not defined the term "crime against a person." However, *Black's Law Dictionary* provides the following definitions that aid our analysis.  And the General Assembly *has* stated that the terms "crime" and "offense" are synonymous under Colorado law. § 18–1–104(1), C.R.S. 2012.

[C]rimes against persons.  A category of criminal offenses in which the perpetrator uses or threatens to use force.  Examples include murder, rape, aggravated assault, and robbery.

*Black's Law Dictionary* 401 (8th ed. 2004).

[O]ffense against the person.  A crime against the body of another human being. The common-law offenses against the person were murder, manslaughter, mayhem, rape, assault, battery, robbery, false im-

prisonment, abortion, seduction, kidnapping, and abduction.

*Id.* at 1112.

*Black's* also defines "crimes against property" as

[a] category of criminal offenses in which the perpetrator seeks to derive an unlawful benefit from—or do damage to—another's property without the use or threat of force. Examples include burglary, theft, and arson (*even though arson may result in injury or death*).

*Id.* at 401 (emphasis added).

¶ 12 Under this definition of a "crime against property," the fact that an offense carries a risk of physical harm to a person does not necessarily establish that the offense is a "crime against a person."

¶ 13 An "offense against public justice and authority" is

[a] crime that impairs the administration of justice. The common-law offenses of this type were obstruction of justice, barratry, maintenance, champerty, embracery, escape, prison breach, rescue, misprision of felony, compounding a crime, subornation of perjury, bribery, and misconduct in office.

*Id.* at 1112.

¶ 14 Many of the offenses that are included in this last definition involve misconduct against another person who is acting in an official capacity or otherwise performing a public function. Yet the offense is not classified as a "crime against a person." For example, at common law, the crime of obstruction of justice was defined as

[i]nterference with the orderly administration of law and justice, as by giving false information to or withholding evidence from a police officer or prosecutor, or by harming or intimidating a witness or juror.

*Id.* at 1107.

¶ 15 Thus, at common law, obstruction of justice could be based on harming or intimidating a witness or juror—a person. Yet it was not an offense *against* that person. Rather, it was an offense against public justice and authority.

## 2. The Model Penal Code and Its Adoption in Colorado

¶ 16 The offense of burglary evolved to address two deficiencies in the early law of attempt. *Cooper v. People*, 973 P.2d 1234, 1237 (Colo.1999), *disapproved of on other grounds by Griego v. People*, 19 P.3d 1 (Colo. 2001).

First, under the common law, attempt required a person to engage in a final act that would have accomplished the crime but for circumstances beyond that person's control. The development of burglary allowed the law to intercede in a prospective felon's conduct at an earlier point in time, combating what was viewed to be "a very heinous offense: not only because of the abundant terror that it naturally carries with it, but also as it is a forcible invasion and disturbance of [the] right of habitation."

*Id.* (citation omitted) (citing Model Penal Code § 221.1, cmt. at 63 (1980); and quoting 4 Blackstone, *Commentaries* 282).

¶ 17 Second, burglary "provide[d] more severe punishment for a particularly terrifying form of inchoate offense." *Id.* at 1237–38 (citing Model Penal Code § 221.1, cmt. at 63; 4 Blackstone at 281).

¶ 18 The Model Penal Code corrected these deficiencies. Nonetheless, burglary continues as a separate offense, in part because "the maintenance of a crime of burglary reflects a considered judgment that especially severe sanctions are appropriate for criminal invasion of premises under circumstances likely to terrorize occupants." Model Penal Code § 221.1, cmt. at 63.

¶ 19 The Model Penal Code expanded the definition of burglary. Under the common law, a criminal intent to steal or commit a felony within the premises was an essential element of the crime of burglary. Under the Model Penal Code, the purpose element was expanded to include *any* crime. *See* Model Penal Code § 221.1.

¶ 20 Colorado adopted a modified version of the Model Penal Code in 1971. However, Colorado's statute limits the class of crimes that can serve as predicates to burglary. Rather than any crime, only an intent to

commit "a crime against another person or property" will support a conviction for second degree burglary. § 18–4–203(1).

### 3. Other Jurisdictions

¶ 21 Courts in two states, Connecticut and Washington, have addressed whether obstructing a peace officer can serve as a predicate to burglary.

¶ 22 In *State v. Wallace,* 56 Conn.App. 730, 745 A.2d 216, 219 (2000), the Connecticut Appellate Court determined that interfering with an officer properly qualified as a predicate offense for burglary. However, because Connecticut law provides that burglary may be predicated on any crime, *see* Conn. Gen. Stat. § 53a–103 (2012), that decision does not aid our analysis.

¶ 23 Like Colorado, Washington limits qualifying predicate offenses for burglary to "crime[s] against a person or property." Wash. Rev.Code §§ 9A.52.020(1), 9A.52.025(1), 9A.52.030(1). Unlike Colorado, however, a Washington statute expressly defines "crimes against persons" and "crimes against property." Wash. Rev.Code § 9.94A.411(2)(a). Obstructing a law enforcement officer does not appear in either category. For this reason, obstructing a law enforcement officer is not a valid predicate offense for burglary under Washington law. *See State v. Devitt,* 152 Wash.App. 907, 218 P.3d 647, 648–49 (2009) (holding, in addition, that offense of obstructing a law enforcement officer did not meet "therein" element of burglary).

¶ 24 Those states that do not statutorily define "crimes against persons" generally make the determination by evaluating the factual basis of the offense.

¶ 25 In Minnesota, the determination of what constitutes a crime against a person for sentencing purposes "depends on the nature of the underlying conduct, not on how the crime is nominally classified." *Lewis v. State,* 697 N.W.2d 624, 627 (Minn.Ct.App. 2005).

Minnesota courts have found that even though burglary is a property crime, *if it involves threatening the occupant* with a knife it is a crime against a person. Like-

wise a conviction for obstructing legal process was a crime against a person where it involved attempting to overpower and take away the handgun of a police officer who was driving at the time *because it posed a special danger to a person's life.*

*Id.* (emphasis added) (citation omitted) (citing *State v. Notch,* 446 N.W.2d 383, 385 (Minn.1989), and *State v. Myers,* 627 N.W.2d 58, 63 (Minn.2001)). Conversely, possession of a firearm by a felon is not a crime against a person because it does "not include any threat to a person and is not directed against a person." *Id.*

### 4. Application

■ ¶ 26 Based on our consideration of these principles, we are persuaded by the Minnesota cases that we have described above that the proper approach involves a case-by-case examination of the underlying elements of the offense as charged and proved, rather than a sweeping attempt to categorize offenses as a matter of law. By taking a case-by-case approach, and by applying that approach here,

1. we recognize that, unlike states such as Washington, our legislature has not promulgated a definition of the phrase "a crime against another person or property";

2. we understand that, unlike the Model Penal Code, our legislature did not write our burglary statute to include "any crime";

3. we recognize that the difference between the phrases "any crime" and "a crime against a person or property" is significant because the latter phrase limits the possible predicate crimes for burglary, *see People v. J.J.H.,* 17 P.3d 159, 162 (Colo.2001) ("Courts should not presume that the legislature used language 'idly and with no intent that meaning should be given to its language.' ") (quoting *McMillin v. State,* 158 Colo. 183, 188, 405 P.2d 672, 674 (1965)); *cf. Lovell Clay Products Co. v. Statewide Supply Co.,* 41 Colo.App. 166, 168, 580 P.2d 1278, 1280 (1978) ("The statutory definition's inclusion of the phrase 'for … construction, erec-

tion, repair, maintenance, or improvement' further signifies, in our view, the General Assembly's intent to limit the statutes' coverage to one actively involved in the project's execution, as opposed to one only passively supplying materials . . . ."); and

4. we apply the common sense definitions of terms such as "crimes against persons," "offense[s] against the person," and "offense[s] against public justice and authority" found in *Black's Law Dictionary,* and, by doing so, we give the statutory phrase "a crime against another person or property" its plain meaning.

¶ 27 Crafting a broad rule, based on categories of offenses, risks absurd results. For example, we could, as defendant urges, base our holding on the organizational placement of a crime in a particular article of title 18, such as article 3 (Offenses Against the Person), or article 4 (Offenses Against Property). However, by doing so, we would exclude from burglary's coverage crimes that obviously are committed against another person, such as child abuse, which is found in article 6 of title 18 (Offenses Involving the Family Relation), *see* § 18–6–401, C.R.S. 2012; pandering of a child, which is found in article 7 of article 18 (Offenses Relating to Morals), *see* § 18–7–403, C.R.S. 2012; or resisting arrest by using physical force against a peace officer, which is found in title 8 of article 18 (Offenses—Governmental Operations), *see* § 18–8–103(1)(a), C.R.S. 2012.

¶ 28 Further, the placement of criminal statutes in particular articles does not necessarily reflect the legislature's intent. As our supreme court recognized in *People v. Borghesi,* 66 P.3d 93, 102 (Colo.2003), "[s]uch designations are generally left to the revisor of statutes, who possesses no authority to make substantive statutory changes."

¶ 29 Applying the case-by-case approach, we reject the prosecution's argument that defendant's conduct in this case threatened the person of a peace officer. Defendant ran from police and entered an apartment building to hide from the pursuing officers. The evidence established that, for the purposes of the crime of obstructing a peace officer, de-

fendant did not use or threaten the use of force against a peace officer. *See Black's Law Dictionary* at 401 (definition of "crimes against persons"). And he did not commit a crime against, or threaten to commit a crime against, the body of anyone, including a peace officer. *See id.* at 1112 (definition of "offense against the person").

¶ 30 Instead, defendant's intent upon entering the building was to avoid capture, and he hid once he was inside. Thus, the elements of the crime of obstructing a peace officer under section 18–8–104(1)(a) that the facts of this case established were:

- defendant
- by using an obstacle, which was the apartment building;
- knowingly;
- obstructed, impaired or hindered the enforcement of the penal law or the preservation of the peace;
- by peace officers who were acting under color of their official authority.

¶ 31 In reaching this result, we make clear that, under a different set of facts, the crime of obstructing a peace officer could be a crime against another person under section 18–18–104(1)(a). One example would be when a defendant uses violence or force against a peace officer to obstruct the officer's enforcement of the law or preservation of the peace.

¶ 32 *Dempsey v. People,* 117 P.3d 800, 811 (Colo.2005), a decision upon which the prosecution relies, is not inconsistent with this result. There, the court analyzed the statute creating the crime of obstructing a peace officer. It concluded that the gravamen of the offense described in that statute "may not be merely verbal opposition," but required conduct that constituted at least the threat of physical interference or obstacle. *Id.* at 810.

¶ 33 We are certainly bound by *Dempsey's* holding, *see People v. Smith,* 183 P.3d 726, 729 (Colo.App.2008) (court of appeals is bound by decisions of supreme court), but that holding does not dictate a different result here. The supreme court did not consider the burglary statute at all, let alone

whether obstructing a peace officer is a crime against another person or property for purposes of the burglary statute.

¶ 34 Under these circumstances, we conclude that the offense was not a crime against a person. As a result, we agree with defendant that it could not be used as a predicate offense for second degree burglary. Because we reverse the conviction for second degree burglary for this reason, we need not address defendant's alternative contention that the prosecution failed to establish his intent to commit a crime "within" the apartment building.

### B. Sufficient Evidence Supported Defendant's Convictions for Vehicular Eluding and Aggravated Motor Vehicle Theft

¶ 35 Defendant contends that (1) his conviction for vehicular eluding must be vacated because the evidence was insufficient to establish that he drove the car in a reckless manner; and (2) consequently, his conviction for aggravated motor vehicle theft must also be vacated because it was based on the offense of vehicular eluding. We disagree.

¶ 36 We review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the defendant's conviction. *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010). In doing so, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

¶ 37 A person commits first degree aggravated motor vehicle theft if the person knowingly exercises control over the motor vehicle of another without authorization and uses the vehicle in the commission of a crime other than a traffic offense. § 18–4–409(2)(d), C.R.S.2012.

¶ 38 Here, the predicate offense alleged is vehicular eluding, section 18–9–116.5(1)(d), C.R.S.2012. That section requires the prosecution to establish, among other things, that the accused recklessly operated a motor vehicle.

¶ 39 A person acts recklessly when the person consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists. § 18–1–501(8), C.R.S.2012. Recklessness involves the actor's awareness of a high risk to others and a conscious decision to engage in conduct in disregard of that risk. *People v. Pena*, 962 P.2d 285, 289 (Colo.App.1997).

¶ 40 Here, the record contains the following evidence:

- Defendant drove the car at "a high rate of speed" through a parking lot and into the street.
- The car "bottomed out," and sparks flew as it left the parking lot.
- Defendant drove the car at thirty to forty miles per hour in a residential area where the speed limit was twenty-five miles per hour.
- Both front doors opened while the car was still moving.
- Defendant "bailed out" of the car while it was still moving.
- After defendant jumped out of the car, it crashed into a fence and a snowplow blade.
- A passenger was still in the car when defendant jumped out.

¶ 41 When viewed as a whole and in the light most favorable to the prosecution, this evidence amply demonstrated the recklessness of defendant's conduct as necessary to establish the offense of vehicular eluding. We therefore perceive no basis to reverse defendant's convictions for aggravated motor vehicle theft and vehicular eluding.

### C. We Will Not Review an Unpreserved Double Jeopardy Claim

¶ 42 Defendant contends that his conviction for vehicular eluding must be vacated because, as charged in this case, vehicular eluding is a lesser included offense of aggravated motor vehicle theft.

¶ 43 Defendant did not raise this issue in the trial court. Some divisions of this court have declined to consider unpreserved double jeopardy claims, while others have proceeded to do so by applying plain error principles.

See *People v. Fuentes–Espinoza*, 2013 COA 1, ¶¶ 10–17, —— P.3d ——, 2013 WL 174439 (describing different positions of court of appeals divisions). Because this issue was not raised below, we decline to address it. *See People v. Cagle*, 751 P.2d 614, 619 (Colo.1988) ("It is axiomatic that this court will not consider constitutional issues raised for the first time on appeal.").

### D. The Trial Court Did Not Err by Denying Defendant's Motion for New Trial Based on Newly Discovered Evidence

¶ 44 We review a trial court's denial of a motion for new trial for an abuse of discretion. *People v. Gallagher*, 194 Colo. 121, 124, 570 P.2d 236, 238 (1977). Motions for new trial based on newly discovered evidence are regarded with disfavor. *Digiallonardo v. People*, 175 Colo. 560, 568, 488 P.2d 1109, 1114 (1971). Even where a witness recants his or her testimony, which is not the case here, such evidence does not necessarily require a new trial. *Farrar v. People*, 208 P.3d 702, 708 (Colo.2009); *Blass v. People*, 79 Colo. 555, 558–59, 247 P. 177, 178 (1926). Rather, to warrant a new trial, the

> evidence must be of sufficient consequence for reasons other than its ability to impeach, or cast doubt upon, the evidence already presented at trial. It must be consequential in the sense of being affirmatively probative of the defendant's innocence, whether that is accomplished by helping to demonstrate that someone else probably committed the crime; that the defendant probably could not have committed the crime; or even that the crime was probably not committed at all.... [I]t must be such that it would probably produce an acquittal.

*Farrar*, 208 P.3d at 706–07 (citations omitted).

¶ 45 Here, defendant and his codefendant were tried separately. Each man was charged with first degree aggravated motor vehicle theft. Defendant was charged with four additional crimes that his codefendant was not charged with: vehicular eluding, second degree burglary, obstructing a peace officer, and criminal mischief. Each man

was also charged with, and acquitted of, robbery.

¶ 46 The victim testified at both trials. Defendant's trial was held first. The victim testified that she had gone to another woman's apartment to "say hello" to her and to buy drugs. She stated that she felt "horrible" because she was going through drug withdrawal; that she was anxious, tired, and hungry; and that she was desperate for more drugs. However, she left without buying any drugs.

¶ 47 When the victim left the apartment, she found two men standing in front of her car. She recognized one of them as defendant, whom she knew because she had encountered him approximately ten times over the previous month. She did not know the other man. Defendant and the other man told her to give them the car keys. When she refused, defendant threatened to "crash" the windows and scrape the car. The victim's telephone rang, and she answered and told the caller that she was in distress. Defendant then grabbed the phone and smashed it. The victim tried to get into the car, and defendant hit her in the face.

¶ 48 Defendant and his codefendant demanded to know where the victim's boyfriend was. She drove them to a restaurant where she had planned to meet her boyfriend, but he was not there. The codefendant said that she was lying, and he threatened to kill her. The victim jumped from the car and ran to safety.

¶ 49 At the codefendant's trial, the victim testified differently in some respects. She said that she had gone to the other woman's apartment to "say hello," but that she had not intended to buy drugs. She testified that she felt "okay"; she was not going through withdrawal; she had slept after being awake for four days; she was not "dying to get high"; and she wanted more drugs, but had left without getting any. She testified that she had very little memory of the incident and no memory of drug use or drinking, although she remembered "big things" like being hit in the face. She remembered two men threatening to kill her, and going to the restaurant.

¶ 50 Although defendant was convicted of aggravated motor vehicle theft, his codefendant was acquitted of the same charge. Defendant contends that the different outcomes must be attributable to the differences in the victim's testimony and that, therefore, a new trial is warranted.

¶ 51 Based on our review of the record, however, we conclude that the differences between the victim's testimony in the two trials would serve merely to impeach her credibility. Further, when considered with all the evidence that was presented at defendant's trial, including the victim's original testimony, we cannot say that evidence of these differences is of such consequence that it would probably produce an acquittal.

¶ 52 We therefore conclude that the trial court did not abuse its discretion by denying defendant's motion for new trial.

### E. Sufficient Evidence Supported the Habitual Criminal Convictions

¶ 53 Defendant argues that there was insufficient evidence to support the trial court's findings that he had previously been convicted of two felonies for the purposes of sentencing him as a habitual criminal. We disagree.

¶ 54 "When reviewing a claim of insufficient evidence, we will uphold a conviction if the verdict is supported by substantial evidence, viewed in the light most favorable to the prosecution." *People v. Loyas,* 259 P.3d 505, 512 (Colo.App.2010); *see also Mata–Medina v. People,* 71 P.3d 973, 983 (Colo. 2003); *People v. McIntier,* 134 P.3d 467, 471 (Colo.App.2005) (evidence is sufficient when "any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt").

¶ 55 Defendant was convicted of habitual criminal counts based on two prior felony convictions: possession of a schedule II controlled substance and escape.

#### 1. Admission of CDOC Records

¶ 56 Defendant contends that the trial court erred by admitting Colorado Department of Corrections (CDOC) records that were used to establish his identity as the perpetrator of the two prior offenses. We disagree.

¶ 57 The decision to admit or to exclude evidence rests in the sound discretion of the trial court, and we will not disturb its ruling on appeal absent a showing of an abuse of discretion. *People v. Mandez,* 997 P.2d 1254, 1266 (Colo.App.1999); *see also People v. Fears,* 962 P.2d 272 (Colo.App.1997)(whether sufficient foundation has been laid for admission of evidence is matter within discretion of trial court).

¶ 58 Section 18–1.3–802, C.R.S.2012, governs the admission of evidence in habitual criminal proceedings. It provides that a duly authenticated copy of the record of a former conviction and judgment is prima facie evidence of the conviction, and that such a record may be used in evidence against the accused. Further, "[i]dentification photographs and fingerprints that are part of the record of such former convictions and judgments, or are part of the records kept at the place of such party's incarceration ... shall be prima facie evidence of the identity of such party." *Id.*

¶ 59 To authenticate or identify evidence, it is generally necessary to produce "evidence sufficient to support a finding that the matter in question is what its proponent claims." CRE 901(a). However, extrinsic evidence of authenticity, as a condition precedent to admissibility, is not required with respect to

> [a] document purporting to bear the signature in his official capacity of an officer or employee of any [state], having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.

CRE 902(2). Such documents are said to be self-authenticating.

¶ 60 Here, the prosecution introduced CDOC records of defendant's prior convictions (the pen pack). The pen pack contained:

- three sets of two photographs of defendant, each set bearing his date of birth and CDOC inmate number;
- two fingerprint identification cards, each bearing defendant's name, date of birth, and CDOC inmate number;
- one mittimus showing defendant's CDOC inmate number, date of birth, and felony conviction for possession of a controlled substance;
- a second mittimus showing defendant's CDOC inmate number, date of birth, and felony conviction for escape; and
- a list of defendant's aliases.

¶ 61 The pen pack included a triple-certified cover sheet, which contained defendant's name and CDOC inmate number and described the contents of the pen pack as "the (1) Photograph, (2) Fingerprint Record, and (3) Commitment attached."

¶ 62 Defendant contends that the certification was invalid because the cover sheet did not specifically describe the contents of the pen pack as *three* photographs, *two* fingerprint identification cards, *two* mittimuses, and an additional list of aliases. He argues that the certification referred only to a single photograph, a single fingerprint card, and a single mittimus.

¶ 63 However, the pen pack was accompanied by a certificate attesting that it contained true and accurate copies taken from the public records over which the custodian had authority. Neither CRE 902 nor section 18–1.3–802 requires that such a certificate identify with specificity the contents of the public record. Rather, the certification serves to establish that the record is authentic—that it is what its proponent claims.

¶ 64 We therefore conclude that the trial court did not abuse its discretion by finding the pen pack to be duly authenticated for purposes of the habitual offender charges.

### 2. Proof of Identity

¶ 65 Defendant next argues that, even if the CDOC records were properly admitted, this evidence was insufficient to establish his identity as the perpetrator of the offense of possession of a controlled substance. Again, we disagree.

¶ 66 As discussed above, each of the photographs, fingerprint identification cards, and mittimuses in the pen pack carried information linking it to defendant through some combination of his name, date of birth, and CDOC inmate number. The Jefferson County case number of the possession conviction, which appeared on the corresponding mittimus, also appeared on one of the fingerprint cards.

¶ 67 When viewed in the light most favorable to the prosecution, this evidence is sufficient to support a finding beyond a reasonable doubt that defendant was the person named in the prior conviction for possession of a controlled substance. *See, e.g., People v. Bernabei*, 979 P.2d 26, 31–32 (Colo.App.1998) (even without fingerprint evidence, documents containing the defendant's physical description, photographs of him, identifying marks, and his prison inmate number were sufficient to establish identity as to prior convictions); *People v. Young*, 923 P.2d 145, 148 (Colo.App.1995) (certified copy of judgment of conviction and official photographic and fingerprint documents were sufficient evidence of identity despite multiple references to wrong case number).

### 3. Discrepancy in Date of Conviction

¶ 68 We also reject defendant's contention that one of his habitual criminal convictions should be vacated because the date of the conviction alleged for the prior offense was different from the date proved by the evidence.

¶ 69 For purposes of habitual criminal proceedings, a

> variance between the specific date of the offense as alleged and the date as proven at trial is not fatal, absent a showing that the defendant was impaired in his defense to the charge at trial or in his ability to plead the judgment as a bar to a subsequent proceeding.

*Young*, 923 P.2d at 148; *see also Loyas*, 259 P.3d at 513.

¶ 70 Here, the information alleged that defendant had been convicted of the felony of possession of a schedule II controlled sub-

stance "[o]n or about January 15, 1999." The corresponding mittimus shows that defendant entered a guilty plea on January 26, 1999, and that the judgment of conviction was entered on January 27, 1999, nunc pro tunc January 15, 1999.

¶ 71 On appeal, defendant contends that this habitual criminal conviction must be reversed because the mittimus reflects an effective date of conviction that is earlier than the date he pled guilty to the offense. However, he has failed to show that he was prejudiced by this discrepancy. *See Young,* 923 P.2d at 148. We therefore conclude that reversal is not warranted.

### F. Habitual Criminal Counts Need Not Be Submitted to a Jury

▪ ¶ 72 We reject defendant's contention that his habitual criminal sentence must be vacated because it was based on facts found by a judge rather than a jury.

▪ ¶ 73 *"Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (emphasis added). The Colorado Supreme Court reaffirmed the prior conviction exception in *Lopez v. People,* 113 P.3d 713, 723 (Colo.2005). Its holding is therefore dispositive. *See also People v. Moore,* 226 P.3d 1076, 1089–90 (Colo.App.2009) (a defendant is not entitled to have a jury make habitual criminal findings; recognizing the ongoing vitality of the prior conviction exception); *People v. Nunn,* 148 P.3d 222, 224–28 (Colo.App.2006) (same; collecting cases).

¶ 74 The judgment of conviction and sentence for burglary are reversed, and the case is remanded to the trial court to resentence defendant by (1) vacating the conviction and sentence for burglary; and (2) amending the mittimus in this case accordingly. The judgment and sentence are otherwise affirmed.

JUDGE RICHMAN concurs.

JUDGE J. JONES specially concurs.

JUDGE J. JONES specially concurring.

¶ 75 I concur in all of the majority's opinion except part II.C., in which the majority declines to address the merits of defendant's contention that his conviction for vehicular eluding must be vacated because, as charged in this case, vehicular eluding is a lesser included offence of first degree aggravated motor vehicle theft. Because defendant's contention raises only a question of law, and does not require development of a factual record, I believe it is reviewable for plain error. *See People v. Greer,* 262 P.3d 920, 931–38 (Colo.App.2011) (J. Jones, J., specially concurring); *see also People v. Zubiate,* 2013 COA 69, ¶ 38, —— P.3d ——, 2013 WL 1909126 (reviewing a similar merger contention for plain error). Undertaking such review, I conclude that we need not vacate defendant's vehicular eluding conviction.[1]

¶ 76 "A defendant may be convicted of multiple offenses arising out of a single transaction if the defendant has violated more than one statute." *Armintrout v. People,* 864 P.2d 576, 578 (Colo.1993); *see also* § 18–1–408(7), C.R.S.2012. But, "[u]nder the Double Jeopardy Clauses of both the United States and Colorado Constitutions, the state may not punish a person twice for the same offense." *Meads v. People,* 78 P.3d 290, 293 (Colo.2003).

¶ 77 We must answer two questions to determine whether punishing a defendant more than once for the same conduct constitutes punishing him twice for the same offense, and therefore violates the Double Jeopardy Clauses. First, has "the legislature intended that each violation be a separate offense[?]" *Id.* Second, if so, does proof of facts establishing the statutory elements of one offense necessarily establish all of the elements of the other offense? *Id.* at 294. I answer the first question "yes," and the second question "no."

---

1. The People have conceded that the vehicular eluding conviction should be merged into the aggravated motor vehicle theft conviction. But we are not bound by that concession. *People v. Torres,* 141 P.3d 931, 936 (Colo.App.2006); *People v. Knott,* 83 P.3d 1147, 1148 (Colo.App.2003).

364

¶ 78 As for the first question, if the legislative intent to create separate offenses is clear, that is the end of the inquiry. *Id.* Such intent is clear from the face of sections 18–4–409 and 18–9–116.5, C.R.S.2012, which establish the separate offenses of aggravated motor vehicle theft and vehicular eluding, respectively. Defendant does not argue to the contrary.

¶ 79 As for the second question, we apply the "strict elements test," whereby we do "nothing more than placing the relevant statutes next to each other, comparing the language, and determining how closely they match." *Meads,* 78 P.3d at 294. If one offense has all of the elements of the other plus one or more additional elements, the latter is included in the former and a defendant may not be convicted of both. *Id.* (The latter offense in such circumstances is referred to as a lesser included offense of the former.) But if not—that is, if one offense does not require proof of all the elements of the other—conviction of both is permissible. *Id.* In undertaking this analysis, we look at the "essential elements" of each offense and determine whether proof of one offense "necessarily" constitutes proof of the other. *Id.* at 294–95. And we do so looking only at the relevant statutes. We do not look at the evidence presented in a particular case or the particular way the offenses are charged. *Id.* (rejecting contention that because offense of aggravated motor vehicle theft was established by the facts which established felony theft, the conviction for aggravated motor vehicle theft could not stand; proof of the latter did not "necessarily" require proof of the former).

¶ 80 A conviction for vehicular eluding requires proof that (1) the defendant, while operating a motor vehicle, eluded or attempted to elude a peace officer who also was operating a motor vehicle; (2) the defendant knew or reasonably should have known that the peace officer was pursuing him; and (3) the defendant operated his motor vehicle in a reckless manner. § 18–9–116.5(1).

**2.** Alternatively, it appears from the structure of section 18–4–409 that proof of an aggravating factor only affects the felony level of the offense. Thus, an aggravating factor is a sentence enhancer, not an element of the offense. We do not

¶ 81 A conviction for first degree aggravated motor vehicle theft requires proof that (1) the defendant knowingly obtained or exercised control over another's motor vehicle; (2) the defendant did so without authorization or by means of threat or deception; and (3) the defendant's conduct satisfied one of eight aggravating factors. § 18–4–409(2). Using the motor vehicle in the commission of a crime other than a traffic offense is one of those eight aggravating factors. § 18–4–409(2)(d).

¶ 82 Thus, while the final requirement of first degree aggravated motor vehicle theft may be established by proof of vehicular eluding, it is not—looking solely at the statutes themselves—necessarily so established. Rather, proving commission of a crime is but one way, of many, that the final requirement may be established.[2]

¶ 83 Accordingly, vehicular eluding is not a lesser included offense of first degree aggravated motor vehicle theft. It follows that defendant could lawfully be convicted of both offenses.

consider sentence enhancers in determining whether one offense is a lesser included offense of another. *Armintrout,* 864 P.2d at 580; *Zubiate,* ¶ 40.