19CA0145 Peo v Bosher 01-27-2022 COLORADO COURT OF APPEALS Court of Appeals No. 19CA0145 El Paso County District Court No. 16CR6176 Honorable Scott Sells, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Michael Douglas Bosher, Defendant-Appellant. JUDGMENT AFFIRMED, ORDER VACATED, AND CASE REMANDED WITH DIRECTIONS Division IV Opinion by JUDGE GROVE Richman and Tow, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced January 27, 2022 Philip J. Weiser, Attorney General, Jillian J. Price, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Michael Douglas Bosher, appeals the judgment of conviction entered on a jury verdict finding him guilty of five counts of sexual assault on a child by one in a position of trust as part of a pattern of abuse, along with one count of sexual exploitation of a child. He also challenges his adjudication as a habitual criminal and the trial court’s order designating him a Sexually Violent Predator (SVP). We affirm the judgment of conviction but vacate Bosher’s SVP designation and remand the case for additional findings. I. Background ¶ 2 The victim, A.S., was “[t]hree, about to turn four” when Bosher started dating her mother. In 2015, when A.S. was fifteen years old, her father contacted the Colorado Springs Police Department because “information had come forward confirming that [A.S.] had been molested.” ¶ 3 In 2014, a year before A.S.’s allegations came to light, police were investigating a child exploitation case involving Allen Wencker, Bosher’s former cellmate. When police searched Wencker’s devices, they found communications between Wencker and Bosher. Wencker also “indicated” to an investigating officer that “he had 
2 discussions about exchanging sexual photographs with [Bosher],” and the investigating officer confirmed that “[Bosher] had sent [Wencker] explicit images.” ¶ 4 Police obtained a search warrant for Bosher’s residence, including his electronic devices. Their search did not uncover any incriminating physical or digital evidence, but Bosher did make some statements to the officers that the prosecution introduced at trial. We describe those statements in more detail below. II. Discussion ¶ 5 Bosher contends that (1) the trial court erroneously denied his motion to suppress; (2) the prosecutor committed misconduct during rebuttal closing argument; (3) the trial court erroneously designated him as a sexually violent predator; and (4) he was entitled to a jury trial on the habitual criminal counts. A. Motion to Suppress ¶ 6 Bosher contends that the trial court erred when it denied his motion to suppress statements that he made while being questioned by Sergeant Blackwell, who was present during the search of his home. He argues that he was in custody during the search and interrogation but did not receive a Miranda advisement, 
3 and that any statements he made should have therefore been suppressed. We are not persuaded. 1. Standard of Review ¶ 7 Whether a defendant was subjected to custodial interrogation is a mixed question of law and fact. People v. Pleshakov, 2013 CO 18, ¶ 16. We defer to the trial court’s findings of historical fact if they are supported by competent evidence in the record, but we review de novo the legal question of whether those facts establish that the defendant was (1) in custody and (2) interrogated. Id. Our analysis is not limited to the trial court’s factual findings and we may also consider undisputed facts evident in the record. Id. 2. Applicable Law ¶ 8 In order to protect a defendant’s Fifth Amendment privilege against self-incrimination, the prosecution may not use statements stemming from his custodial interrogation unless (1) he has been warned that he has the right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to an attorney, either retained or appointed; and (2) he waives these rights voluntarily, knowingly, and intelligently. Miranda v. Arizona, 384 U.S. 436, 467-75 (1966). 
4 ¶ 9 A person is “in custody” under Miranda if he has been formally arrested or, “under the totality of the circumstances, a reasonable person in the defendant’s position would consider himself to be deprived of his freedom of action to the degree associated with a formal arrest.” People v. Begay, 2014 CO 41, ¶ 13 (citation omitted). In determining whether a defendant is in custody, courts consider the following non-exclusive factors: (1) the time, place, and purpose of the encounter; (2) the persons present during the interrogation; (3) the words spoken by the officer to the defendant; (4) the officer’s tone of voice and general demeanor; (5) the length and mood of the interrogation; (6) whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; (7) the officer’s response to any questions asked by the defendant; (8) whether directions were given to the defendant during interrogation; and (9) the defendant’s verbal or nonverbal response to such directions. People v. Matheny, 46 P.3d 453, 465-66 (Colo. 2002). ¶ 10 Our inquiry is an objective one. Begay, ¶ 18. Subjective, “unarticulated thoughts or views of the officers and suspects are irrelevant.” Id. (citation omitted). 
5 3. Matheny Factors ¶ 11 Applying the Matheny factors to the trial court’s factual findings and the undisputed evidence at the suppression hearing, we make the following observations. (1) Time, place, and purpose of the encounter. Bosher made the statements while his house was being searched pursuant to a search warrant. He was detained while the house was cleared, although he was in his kitchen, a neutral location. He was not handcuffed. (2) Persons present. Bosher’s fiancee was in the house during the execution of the search warrant (although not in the immediate vicinity). Nothing in the record suggests that the police intentionally isolated Bosher from his fiancee or from his daughter and son-in-law, who arrived during the search. (3) Words spoken to defendant. Blackwell told Bosher he was not under arrest “several times.” He also informed Bosher of the underlying reason for the search warrant and told Bosher that he would be arrested if child pornography was found. 
6 (4) Officer’s tone of voice and general demeanor. The trial court found “no evidence that any threatening language was used by [Blackwell] or any raised voices.” (5) Length and mood of the interrogation. The record does not reflect how long the interrogation lasted, but the trial court described it as a “conversation,” and specifically noted that there was “no evidence of yelling or coercive conduct.” In response to Bosher’s question about what the police were looking for, Blackwell told Bosher of the event that prompted the search warrant — Wencker’s arrest and the search of his cell phone, which contained “chats between [Bosher and Wencker] discussing trading images and child pornography.” The cell phone, Blackwell told Bosher, contained an image (sent from Bosher to Wencker) that Bosher said was him “having sex with a seven-year-old girl.” Bosher replied that “he wasn’t familiar with th[e] photograph” that Blackwell was describing, so Blackwell showed Bosher a “sanitized” copy of it. Bosher responded, “that’s not me” and indicated that he did not remember having that image. 
7 After further discussion, and before telling Bosher that he was free to leave, Blackwell told Bosher that he would be arrested “if we find child pornography.” (6) Limitation of movement or other restraint. At least six armed officers wearing protective gear executed the search warrant. When the officers entered the house, they had their weapons drawn, but they reholstered them after clearing the residence. Bosher was detained while the house was being cleared, and during that time he “was verbally told to move to another spot.” However, the trial court found that “[a]t no time was [Bosher] in handcuffs or manhandled in any way, physically touched, or forcibly moved from one place to another.” (7) Officer’s response to any questions. Bosher initiated the conversation with Blackwell when he asked what the police were looking for. Blackwell showed him the search warrant and explained that the officers were searching the residence for child pornography or evidence relating to child pornography. Bosher replied, “good luck with that.” Other than initially asking about the reason for 
8 the search, Bosher did not ask questions during the interrogation. At some point during the search, he asked to put on additional clothing, and the officers allowed him to do so. (8) Whether directions were given to the defendant. As noted above, Bosher was instructed to remain in the kitchen while the house was being cleared, but Blackwell did not give Bosher directions during the interrogation. (9) The defendant’s response to any such directions. Aside from remaining in the kitchen as requested, Bosher was not given any directions. 4. Analysis ¶ 12 We conclude that Bosher was not in custody during the interrogation. It took place in a neutral location pursuant to a search (and not an arrest) warrant, see People v. Cowart, 244 P.3d 1199, 1204 (Colo. 2010) (noting that a neutral location such as the defendant’s living room weighed against a determination of custody), and was conducted by a single officer, see People v. Figueroa-Ortega, 2012 CO 51, ¶ 9 (noting that defendant was not in custody, in part because he was questioned “by a single officer in 
9 civilian clothes, who neither offered any show of force nor restricted the defendant’s freedom of movement in any way, and who made no threats or promises or demands”). Bosher was detained while officers cleared the house, but he was not handcuffed or physically touched. See People v. Taylor, 41 P.3d 681, 693 (Colo. 2002) (finding custody when defendant was detained in a “police dominated atmosphere where the officers used physical force to control [d]efendant’s movement”); People v. Breidenbach, 875 P.2d 879, 886 (Colo. 1994) (finding defendant in custody, in part because officers stopped and interrogated him with guns drawn). ¶ 13 Bosher spoke first, and the encounter was conversational in tone. Blackwell did not raise his voice, instruct Bosher to do anything other than remain in the kitchen, or use threatening language. See People v. Davis, 2019 CO 84, ¶ 34 (noting that open-
ended questions delivered “in a conversational tone [are] of the exact kind [that] we have found to weigh against a finding of custody”). ¶ 14 To be sure, there is some evidence that would lend support to a finding of custody. For example, Blackwell did not inform Bosher that he was free to leave until after Bosher made the challenged 
10 statements. And Blackwell did tell Bosher that he would be arrested if the searchers found child pornography. But that statement, standing on its own, did not elevate the discussion into a custodial interrogation. Cf. Figueroa-Ortega, ¶ 10 (“[M]erely confronting a suspect with the evidence against him and threatening, no matter how confidently, to charge him with a crime at some point in the future does not, by itself, constitute an infringement on his liberty, much less the kind of infringement associated with a formal arrest.”). ¶ 15 Weighing the totality of the circumstances, we conclude that a reasonable person in Bosher’s position would not consider himself to be deprived of his freedom of action to the degree associated with formal arrest when he spoke to Blackwell at his residence. As a result, Bosher was not in custody for Miranda purposes and the trial court did not err by denying his motion to suppress. B. Prosecutorial Misconduct ¶ 16 Bosher contends that the prosecutor committed misconduct during rebuttal closing argument when discussing the possible alteration of a photograph to eliminate features that would identify Bosher as the person that it depicted. We disagree. 
11 1. Standard of Review ¶ 17 In reviewing prosecutorial misconduct claims, we first consider the propriety of the prosecutor’s arguments, keeping in mind that “[w]hether a prosecutor’s statements constitute misconduct is generally a matter left to the trial court’s discretion.” Domingo-
Gomez v. People, 125 P.3d 1043, 1049 (Colo. 2005). We consider “the context of the argument as a whole and in light of the evidence before the jury.” People v. Samson, 2012 COA 167, ¶ 30. ¶ 18 If any of the statements were improper, we review their “combined prejudicial impact” to determine whether reversal is required under the applicable standard. Domingo-Gomez, 125 P.3d at 1053; see also Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). “As to preserved issues, the trial court’s rulings on prosecutorial misconduct ‘will not be disturbed by an appellate court in the absence of a gross abuse of discretion resulting in prejudice and a denial of justice.’” People v. Rhea, 2014 COA 60, ¶ 42 (citation omitted). 2. Applicable Law ¶ 19 A prosecutor may use legitimate means to bring about a just conviction but must avoid using improper methods designed to 
12 obtain an unjust result. Domingo-Gomez, 125 P.3d at 1048. Prosecutorial remarks that evidence personal opinion or personal knowledge, or that inflame the passions of the jury, are improper. Id. at 1050. ¶ 20 When reviewing allegedly improper comments during closing arguments, we must consider the comments in the context of the prosecutor’s closing argument as a whole and in light of all the evidence. People v. Serpa, 992 P.2d 682, 685 (Colo. App. 1999). Prosecutors have wide latitude during closing arguments and “may comment on the evidence admitted at trial, the reasonable inferences that can be drawn from the evidence, and the instructions given to the jury.” People v. Welsh, 176 P.3d 781, 788 (Colo. App. 2007); see People v. DeHerrera, 697 P.2d 734, 743 (Colo. 1985) (closing argument may properly include facts in evidence and any reasonable inferences drawn therefrom.). 3. Additional Facts ¶ 21 The comments in question referenced the photograph that Bosher texted to Wencker, which depicted a man engaged in a sexual act with a “minor child female.” In the photograph, the male’s face is not seen, but he appeared to have “a mole or 
13 birthmark on [his] left hip.” Wencker told police “that Mr. Bosher told him that it was him [Bosher] having sex with her.” When confronted with the photograph at his residence during the execution of a search warrant, however, Bosher denied that he was in it and voluntarily showed Blackwell his left hip, which did not have a similar mark. 4. Analysis ¶ 22 In closing argument, Bosher’s attorney argued that Bosher was not in the photograph because he did not have a mole on his hip. The prosecutor addressed that question in rebuttal as follows. [O]ne of the last things you saw in evidence, is the mole. Or the lack — excuse me, the lack of a mole. One of the things that I asked their expert about repeatedly, was the ability to manipulate a photograph and the different softwares that are out there. And what I put to you, is that somebody who is engaged in the distribution of child pornography, might have a motive to alter the photograph. Defense counsel objected to this statement, but the trial court overruled the objection. ¶ 23 We conclude that the prosecutor’s statement was a fair response to defense counsel’s “opening salvo,” People v. Perea, 126 
14 P.3d 241, 247 (Colo. App. 2005) (citation omitted), and did not mislead or unduly influence the jury. It was consistent with the following colloquy between the prosecutor and Bosher’s expert on computer forensics. [Prosecutor]: [I]n your expert opinion, would you say that collectors of child pornography take every measure they can to oftentimes change file names or shield what’s in files and try to keep those images secret? [Witness]: [T]here are collectors who I would describe as enormously careful . . . . . . . . [Prosecutor]: [I]f the images started out as a Polaroid and were then converted to a digital file, they could be manipulated in any number of ways to include cropping out what we would commonly understand like the white border around a Polaroid photo? [Witness]: Anything is possible. ¶ 24 The court also asked the expert a similar question that had been submitted by a member of the jury. [Court]: Are there programs available that allow for enhancement of photographs? [Witness]: Yes. [Court]: I.e. making Polaroids clearer or more professional level? 
15 [Witness]: No. The photo editing programs . . . that can lighten photographs or change colors or other such things like that, they would not be able to enhance the quality of a photograph. ¶ 25 Given this testimony, we conclude that the prosecutor’s statement was within the bounds of reasonable inference drawn from the evidence. The prosecutor did not directly argue that Bosher altered the photograph in question, rather, he made a generalization that collectors of child pornography would have reason to alter photographs and the available tools to accomplish such a task. This commentary was consistent with the expert’s testimony and was a reasonable response to defense counsel’s argument that Bosher was not in the picture because it did not match Bosher’s physical characteristics. ¶ 26 Accordingly, we discern no abuse of discretion. C. SVP Designation ¶ 27 Bosher contends, and the People concede, that the trial court’s findings were insufficient to support his SVP designation because the trial court did not specifically find that Bosher promoted a relationship with the victim primarily for the purpose of sexual 
16 victimization, as required under section 18-3-414.5(2), C.R.S. 2021. We agree. 1. Applicable Law ¶ 28 Section 18-3-414.5(2) provides that, based on the results of the risk assessment prepared by the probation department, the trial court “shall make specific findings of fact and enter an order concerning whether the defendant is a sexually violent predator.” § 18-3-414.5(2); see People v. Tuffo, 209 P.3d 1226, 1231-32 (Colo. App. 2009) (remanding for specific factual findings on contested issues underlying the SVP designation). ¶ 29 Here, the trial court did not make specific factual findings as to whether Bosher “promoted a relationship” with A.S. Moreover, the risk assessment indicated that he did not “promote a relationship.” The record is therefore inadequate to support the trial court’s generalized finding that Bosher met the criteria for his SVP designation, and we remand the case for the trial court to make specific findings on that question as required by section 18-3-
414.5(2), and, if necessary, to correct the mittimus accordingly. D. Right to Trial by Jury 
17 ¶ 30 Bosher contends that the trial court erred when the trial judge, rather than a jury, adjudicated him a habitual offender. Because it is settled that there is no constitutional right to a jury trial on habitual offender charges, we discern no error. 1. Applicable Law ¶ 31 The Supreme Court held in Apprendi v. New Jersey, that “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. 466, 490 (2000). 2. Analysis ¶ 32 Under the “prior conviction” exception, habitual criminality may be constitutionally adjudicated by a judge and not a jury. See Lopez v. People, 113 P.3d 713, 723 (Colo. 2005) (holding the prior conviction exception to the right to jury trial “remains valid”); see also Mountjoy v. People, 2018 CO 92M, ¶¶ 11-24 (rejecting a challenge to Lopez); People v. Pointdexter, 2013 COA 93, ¶¶ 72-73 (“The Colorado Supreme Court reaffirmed the prior conviction exception in Lopez . . . .”). Accordingly, Bosher was not entitled to a jury trial on the habitual criminal charges. 
18 III. Conclusion ¶ 33 The judgment of conviction is affirmed. We vacate the order designating Bosher a sexually violent predator and remand for the trial court to make specific factual findings consistent with this opinion, and, if warranted, to correct the mittimus accordingly. JUDGE RICHMAN and JUDGE TOW concur.