The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Thomas D. FERRERO, Defendant–Appellant.

No. 91CA0814.

Colorado Court of Appeals, Div. IV.

Dec. 30, 1993.

Rehearing Denied Jan. 27, 1994.

Certiorari Denied June 13, 1994.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Roger G. Billotte, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

Defendant, Thomas Ferrero, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of first degree murder. We affirm.

### I.

Defendant first contends that the trial court erred by denying his challenge for cause as to one of the prospective jurors. We disagree.

A defendant has the fundamental right to a fair trial by a panel of impartial jurors, and, to protect that right, the trial court must exclude prejudiced or biased persons from the jury. Section 16–10–103(1)(j), C.R.S. (1986 Repl.Vol. 8A). And, a trial court's denial of a challenge for cause will be set aside only if the record discloses a clear abuse of discretion. *People v. Prator*, 856 P.2d 837 (Colo.1993); Crim.P. 24(b)(1)(X).

A prospective juror's expression of concern or indication of a preconceived belief as to some facet of the case does not automatically require exclusion for cause. *People v. Russo*, 713 P.2d 356 (Colo.1986). If the court is satisfied that the juror will be able to set aside the preconceived notion and render an impartial verdict according to the law and the evidence admitted at trial, the juror should not be disqualified. *People v. Drake*,

748 P.2d 1237 (Colo.1988). In making that determination, the trial court may consider a potential juror's assurances that the juror can fairly and impartially serve on the case. *See People v. Sandoval*, 733 P.2d 319 (Colo. 1987).

■ In this case, during preliminary *voir dire* procedures, the prospective juror was questioned individually regarding her statements on a questionnaire that she had formed an opinion regarding the defendant's guilt. When asked about her ability to set aside this preconceived opinion, the juror expressed concern about her ability to do so. However, she also indicated that she would follow the court's instructions and base her decision in the case solely on the evidence presented in the courtroom.

The following day, the potential juror was called to the jury box to replace a panel member who had been excused on a peremptory challenge. When questioned again, the juror stated that she was not aware of anything that would disqualify her to sit as a juror on the case, that she could apply the law as instructed by the court, and that she would base her decision on testimony presented in court. She also stated that she had no reservations about sitting on the jury based on anything she had read or heard.

During the preliminary round of questioning, the potential juror's responses and statements were at times inconsistent. However, viewed as a whole, her responses do not reveal an unyielding belief that the defendant was guilty. *Cf. Nailor v. People*, 200 Colo. 30, 612 P.2d 79 (1980) (after extensive *voir dire*, juror still harbored serious doubts about her fairness and impartiality). The full context of her responses on the first day combined with her final, unequivocal answers on the second day support the trial court's conclusion that the juror could set aside any preconceived opinion and base her decision on the law and the evidence admitted at trial.

Under all of the circumstances disclosed by the record, we perceive no abuse of discretion in the denial of defendant's challenge for cause. *See Beeman v. People*, 193 Colo. 337, 565 P.2d 1340 (1977).

## II.

Defendant next asserts that the trial court erred in denying his motion for mistrial on grounds that the prosecutor was using peremptory challenges to exclude Hispanic prospective jurors in violation of the Equal Protection Clause of the Fourteenth Amendment. We disagree.

■ A prosecutor may not use peremptory challenges to exclude prospective jurors solely on the basis of race. It is presumed, however, that the prosecutor exercised such challenges on constitutionally permissible grounds. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Fields v. People*, 732 P.2d 1145 (Colo.1987). The burden is on the defendant to prove the existence of purposeful discrimination. *People v. Cerrone*, 854 P.2d 178 (Colo.1993).

■ In *People v. Cerrone, supra*, the supreme court adopted *Batson*'s three-step process for evaluating claims of racial discrimination in jury selection under the Equal Protection Clause. First, the defendant must make a *prima facie* showing that the State has excluded potential jurors on account of race. Then, if the requisite showing is made, the burden shifts to the state to articulate a race-neutral explanation for excluding the jurors in question. Finally, if the state presents a neutral explanation, the trial court must consider all relevant circumstances to determine whether the defendant has established purposeful discrimination. *People v. Cerrone, supra*.

■ A defendant may establish a *prima facie* case of purposeful discrimination by showing that the jury in question was selected under a practice providing the opportunity for discrimination, the persons excluded were members of a cognizable racial group, and members of that group were substantially underrepresented on the jury. A *prima facie* showing is made if the totality of the relevant facts gives rise to an inference of discriminatory purpose. *People v. Cerrone, supra*.

■ Here, we conclude that the defendant failed to establish a *prima facie* case of unconstitutional discrimination in the prosecu-

tor's use of peremptory challenges. The prosecution had exercised five of its twelve peremptory challenges when defendant moved for a mistrial. Defendant claimed that, because three of the five persons excluded were Spanish-surnamed and thus members of a cognizable group, *see Fields v. People, supra,* the prosecution was using its peremptories in a racist manner.

However, the prosecutor then used three more of his remaining seven challenges, and none of those were used to excuse Hispanics. Spanish-surnamed individuals were not substantially underrepresented on the jury; indeed, two Hispanics were on the final panel and one of the alternates was Hispanic. And, neither the defendant nor the victim were Hispanic. *See People v. Cerrone, supra,* 854 P.2d at 188, n. 16 (evidence of racial identity between defendant and excused person may still serve evidentiary function).

Because we conclude that defendant failed as a matter of law to make a *prima facie* case of purposeful discrimination, we find it unnecessary to determine whether the prosecutor articulated a race-neutral explanation for excluding the jurors in question. The record supplies sufficient neutral reasons to sustain the prosecutor's use of peremptory challenges. *See Fields v. People, supra,* 732 P.2d at 1158, n. 21. Therefore, we find no abuse of discretion in the trial court's denial of defendant's motion for mistrial.

### III.

Defendant's tendered instructions concerning self-defense and manslaughter stated that, in determining whether defendant's acts in self-defense were reasonable, the jury could consider prior threats and acts of violence by the deceased which were known to defendant. Defendant argues that these instructions related to his theory of defense and, since they were supported by the evidence, the trial court erred in refusing to submit them to the jury. We disagree.

We find that defendant's tendered instructions were unnecessary since the issues addressed by them were adequately encompassed within other instructions given to the jury. *See People v. Nunez,* 841 P.2d 261

(Colo.1992); *People v. Tippett,* 733 P.2d 1183 (Colo.1987) (defendant not entitled to duplicitous defense instructions).

Defendant also tendered an instruction which contained definitions of terms used in the "heat of passion manslaughter" instruction. However, the language in the court's heat of passion manslaughter instruction was properly based on § 18-3-104(1)(c), C.R.S. (1986 Repl.Vol. 8B) and *COLJI-Crim.* No. 9:08 (1983).

Moreover, the terms used in that instruction are susceptible to general understanding by persons of common intelligence and need not be further defined. *See People v. Lanari,* 811 P.2d 399 (Colo.App.1989), *aff'd in part and rev'd in part on other grounds,* 827 P.2d 495 (Colo.1992).

The instructions as a whole adequately informed the jury as to the offense. Accordingly, the trial court's decision not to define the issue further was not erroneous. *See People v. Deadmond,* 683 P.2d 763 (Colo. 1984).

### IV.

Defendant asserts that the trial court erred in allowing the jury to review during deliberations defendant's videotaped confession which had been admitted into evidence. Again, we disagree.

Jurors may not have unsupervised access during deliberations to a videotape of a *witness'* out-of-court statement that was admitted into evidence in a criminal case. *People v. Montoya,* 773 P.2d 623 (Colo.App. 1989). We have previously held, however, that the same rule does not apply to evidence of a voluntary confession by the *defendant. People v. Miller,* 829 P.2d 443 (Colo.App. 1991).

In *People v. Miller, supra,* we determined that the *transcript* of a defendant's confession, which has been admitted into evidence, may be taken into the jury room during deliberations so long as the defense is given an opportunity to point out any circumstances that may undermine its credibility. A confession which has been shown by the state to be free from coercive conditions is among the strongest kind of physical evi-

dence the prosecution may produce. Thus, during its deliberations, the jury may have unsupervised access to the transcript of a confession. *People v. Miller, supra.*

We perceive no reason to distinguish between the *transcript* of a defendant's confession and a *videotape* of that same confession. A videotape is merely a modern substitute for a written statement; it accomplishes the same purpose, but more expeditiously and more correctly. *See State v. Triplett,* 248 Iowa 339, 79 N.W.2d 391 (1956), *cert. dismissed,* 357 U.S. 217, 78 S.Ct. 1358, 2 L.Ed.2d 1361 (1958).

We hold that a videotape of a defendant's confession, which has been admitted into evidence, may be taken into the jury room during deliberations. *See State v. Dietz,* 182 W.Va. 544, 390 S.E.2d 15 (1990), *habeas corpus granted sub nom, Dietz v. Legursky,* 188 W.Va. 526, 425 S.E.2d 202 (1992) (audio tape of defendant's confession allowed into jury room); *State v. Poulos,* 230 Kan. 512, 639 P.2d 477 (1982). *See also People v. Aponte,* 867 P.2d 183 (Colo.App.1993) (jury permitted to take into jury room videotape and transcript of drug sale); *People v. Coca,* 40 Colo. App. 440, 580 P.2d 1258 (1978) (audio tape and transcript of defendant's drug sale).

We therefore find no error in the trial court's decision to permit the jury to review the tape during deliberations.

## V.

■ We also disagree with defendant's next argument that the trial court abused its discretion by failing to question the jurors after learning they had been exposed to extraneous information.

During the jury's deliberations, defense counsel informed the court that the bus driver who transported the jurors told them their names had been printed in the local newspaper. Defense counsel expressed concern that the jurors might be apprehensive about possible retribution by the victim's family and that such fearfulness could improperly influence the verdict. Defense counsel requested that the jurors be instructed that they should not be influenced by anything they had heard.

The trial court declined to give cautionary instructions, stating that it would serve only to highlight the incident, and noted the jurors had not expressed any fear of reprisal that would interfere with their ability to reach an impartial verdict. When the court declined the request, defense counsel moved unsuccessfully for a mistrial.

■ In evaluating the possibility of prejudice resulting from juror exposure to extraneous information or influences, the trial court must first determine whether the information has a potential for unfair prejudice, focusing upon whether the information is inherently prejudicial. If the information is inherently prejudicial, or if the court has doubt about the existence of prejudice, the court then should poll the jury to find out if the jurors have learned of the information. Finally, if they have been exposed, the court should examine the jurors separately to determine how much they know of the distracting information and what effect, if any, it has had on their ability to decide the case fairly. *Harper v. People,* 817 P.2d 77 (Colo.1991).

In this case, the jurors knew from the outset that their identities would be public knowledge; therefore, the extraneous information—publication of their names in the local newspaper—was not inherently prejudicial. Defendant's trial was open to the public, and the jury was in full view of witnesses and spectators. The record indicates that the names of the jurors were announced in open court, that no efforts were made to keep their identities secret, and that supporters of both the victim and defendant were present during the trial. And, the trial took place in a small community where the degree of personal anonymity was diminished. Under the circumstances, we perceive no abuse of discretion in the trial court's decision not to question the jurors mid-trial regarding the publication's effect on their ability to render an impartial verdict. *See Harper v. People, supra.*

Moreover, the record on defendant's motion for a new trial supports the court's determination that there was no reasonable possibility that the extraneous information tainted the jury's verdict. *See Wiser v. Peo-*

*ple,* 732 P.2d 1139 (Colo.1987). Testimony at the hearing as to the jurors' emotional reactions to the information was excludable under CRE 606(b) as improper inquiry into the jurors' thought processes and emotions during deliberations, and was irrelevant under *Wiser*'s objective standard. *See People v. Harrison,* 746 P.2d 66 (Colo.App.1987). Mere publication of information which is already open to the public does not lead to the conclusion that there was a reasonable possibility the verdict was affected.

## VI.

 Defendant's final contention, that the trial court erred in barring evidence of juror misconduct which may have affected the verdict, is also without merit.

In denying the motion for new trial, the trial court considered the affidavit of a juror in which she stated that other jurors yelled at her and that, because of an illness, she was coerced into voting to convict on the charge of first degree murder. The juror also testified at the hearing and described her symptoms. Asked by defense counsel if, but for her illness and the other jurors yelling she would have voted the way she did, the juror stated she was sick and "could not take it any longer." The trial court ruled that the affidavit and the juror's testimony were precluded under CRE 606(b).

When the validity of a verdict is attacked, a juror may not testify as to matters occurring during the course of deliberations or to the effect of anything upon her or any other juror's mind or emotions. CRE 606(b). However, a juror may testify as to whether extraneous prejudicial information was improperly brought to the juror's attention or whether any outside influence was improperly brought to bear upon any juror. *Ravin v. Gambrell By and Through Eddy,* 788 P.2d 817 (Colo.1990).

Here, the trial court correctly determined that the juror's affidavit and testimony about her physical condition and its effect on her ability to hold out against the other jurors' yelling constituted an improper inquiry into her thought processes and emotions and was,

therefore, inadmissible under CRE 606(b). *People v. Harrison, supra.*

Moreover, the record does not support defendant's assertion that the pressure exerted upon the juror rose to the level of that present in *Wharton v. People,* 104 Colo. 260, 90 P.2d 615 (1939). In *Wharton,* the jurors engaged in hours of continuous violent, abusive, and profane language and conduct, and allegedly threatened "physical combat" against the one juror who disagreed with the majority. Here, there was no evidence of threats, abuse, or any coercion beyond "yelling."

Mere argumentation does not rise to the level of juror misconduct necessary to permit impeachment of the verdict. *See People v. Black,* 725 P.2d 8 (Colo.App.1986). Analyzing the alleged coercion under an objective test, therefore, we conclude that the trial court properly denied defendant's motion for new trial. *See People v. Rudnick,* 1993 WL 539939 (Colo.App. No. 92CA1247, December 30, 1993).

Judgment affirmed.

JONES and RULAND, JJ., concur.