24CA2031 Latsis v Arapahoe 03-05-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2031
Board of Assessment Appeals No. 23BAA5069

George Latsis,

Petitioner-Appellant,

v.

Arapahoe County Board of Equalization,

Respondent-Appellee,

and

Board of Assessment Appeals,

Appellee.

ORDER AFFIRMED

Division I
Opinion by JUDGE LUM
J. Jones and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 5, 2026

George Latsis, Pro Se

Ronald A. Carl, County Attorney, Benjamin Swartzendruber, Senior Assistant
County Attorney, Littleton, Colorado, for Respondent-Appellee

Philip J. Weiser, Attorney General, Stephen J. Woolsey, Assistant Solicitor
General, Denver, Colorado, for Appellee

¶ 1 Petitioner, George Latsis, appeals the final agency order of the Board of Assessment Appeals (BAA) determining the value of his property for the 2023 tax year. We affirm.

## I. Background

¶ 2 Latsis owns a 2,629-square-foot residence on a 17,860-square-foot lot. For the 2023 tax year, the Arapahoe County Board of Equalization (BOE) valued the property at $1,043,100. Latsis filed a petition with the BAA protesting the valuation, and a hearing was held on September 18, 2024.

¶ 3 At the hearing, Latsis presented evidence in support of his proposed $866,255 valuation. The BOE presented an expert witness, Riva Cordova, who had appraised Latsis's property and recommended a reduction in value from $1,043,100 to $949,000. The BAA agreed with Cordova's estimated value and entered an order reducing the value of Latsis's property to $949,000. Latsis appeals.

## II. Standard of Review

¶ 4 Property owners may appeal a decision of the BAA to this court. § 39-8-108(2), C.R.S. 2025; *Gilpin Cnty. Bd. of Equalization v. Russell,* 941 P.2d 257, 263-64 (Colo. 1997). We review BAA

1

decisions under the State Administrative Procedure Act, § 24-4-106(7), (11), C.R.S. 2025. *See* § 39-8-108(2); *Bd. of Assessment Appeals v. Sampson,* 105 P.3d 198, 208 (Colo. 2005). "A decision of the Board may be set aside only if it is unsupported by competent evidence or if it reflects a failure to abide by the statutory scheme for calculating property tax assessments." *Sampson,* 105 P.3d at 208.

¶ 5 A taxpayer bears the burden to show by a preponderance of the evidence that the assessor's valuation is incorrect. *Cantina Grill, JV v. City & Cnty. of Denv. Bd. of Equalization,* 2012 COA 154, ¶ 44, *aff'd on other grounds,* 2015 CO 15. "It is the function of the BAA, not the reviewing court, to weigh the evidence and resolve any conflicts." *Sampson,* 105 P.3d at 208. "[T]he evaluation of the credibility of the witnesses and the weight, probative value, and sufficiency of all of the evidence are matters solely within the fact-finding province of the BAA, whose decisions in such matters may not be displaced on appeal by a reviewing court." *Gyurman v. Weld Cnty. Bd. of Equalization,* 851 P.2d 307, 310 (Colo. App. 1993).

### III. Procedural and Evidentiary Issues

¶ 6 Latsis contends that the BAA violated his due process rights by increasing his evidentiary burden, improperly permitting the BOE to reference prior tax appeals, curtailing testimony from his witnesses, preventing him from cross-examining other witnesses, and unevenly allocating hearing time. We discuss each contention in turn.

### A. Applicable Law

¶ 7 A party's right to procedural due process is met if the party is provided with notice and an opportunity to be heard. *Pub. Utils. Comm'n v. Colo. Motorway, Inc.*, 437 P.2d 44, 47 (Colo. 1968). The essence of procedural due process is fundamental fairness. *City & County of Denver v. Eggert*, 647 P.2d 216, 224 (Colo. 1982). If an agency's determination depends on the resolution of factual issues in a hearing, procedural due process requires that the "parties be apprised of all the evidence to be submitted and considered, and that they be afforded a reasonable opportunity in which to confront adverse witnesses and to present evidence and argument in support of their position." *Hendricks v. Indus. Claim Appeals Off.*, 809 P.2d 1076, 1077 (Colo. App. 1990).

¶ 8　　Errors in administrative proceedings do not require reversal unless the complaining party can show prejudice. *Joseph v. Mieka Corp.*, 2012 COA 84, ¶ 67.

### B.　Analysis

¶ 9　　Latsis contends that the BAA made several procedural and evidentiary errors that impacted his right to a fair hearing.

¶ 10　　First, Latsis argues that the BAA erred by stating, "[W]ithout additional interior photographs of the subject property, it is difficult for the [BAA] to justify any change in how the subject property's quality grade was ascertained by the [BOE's] appraiser." This statement, Latsis says, imposed a de facto requirement that he provide interior photographs and unfairly heightened his burden of proof. *See* § 39-5-122(5)(b), C.R.S. 2025 ("Any information presented by the taxpayer regarding the value of his property shall be considered by the assessor in determining whether an adjustment in value is warranted."). We disagree. The BAA's statement regarding photographs was simply an explanation for why it didn't credit Latsis's description of the property's interior over Cordova's appraisal. It is the BAA's sole province to weigh the evidence and determine its sufficiency. *Gyurman*, 851 P.2d at 310.

To the extent Latsis argues that the BOE's references to the photographs during closing argument were improper, that argument isn't preserved, and we decline to address it. *See CTS Invs., LLC v. Garfield Cnty. Bd. of Equalization*, 2013 COA 30, ¶ 14 ("A party generally must first raise an objection in the administrative proceeding to preserve a contention for appeal."); *Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) (the court of appeals generally does not review unpreserved issues in civil cases).

¶ 11     Next, Latsis contends that the BAA violated its duty to provide de novo review of the underlying assessment decision by allowing the BOE's attorney to reference Latsis's property tax appeals in prior years during the hearing. However, of the six allegedly improper comments he identifies, two don't appear in the record,[1] and his challenges to the remaining four are unpreserved because

---

[1] Latsis also fails to provide record citations in connection with these two statements, and we are not obligated to search the record to address his appellate contentions. *See O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo. App. 2010); *People v. Duran*, 2015 COA 141, ¶ 20.

he didn't object to the remarks at the hearing.[2]  *See CTS Invs., LLC,* ¶ 14.  Accordingly, we do not address this argument.

¶ 12    We reject many of Latsis's remaining contentions because he doesn't explain how the alleged errors prejudiced him.  *See Mieka Corp.,* ¶ 67.

- Latsis argues that the BAA "improperly cut off" Kathryn Latsis's testimony about her sale of a comparable property, which would have showed that "the [BOE]'s valuation assumptions were overstated by at least $175,000."  However, both Latsis's opening brief and the record reflect that Kathryn[3] testified about her sale of the purported comparable property, including that she sold it for "$175,000 less."  Thus, she had already testified about the information Latsis wanted to elicit.  To the extent Latsis raises other arguments about Kathryn's

---

[2] In response to the BOE counsel's comment regarding Latsis's 2017 appeal, Latsis said, "I don't understand why anything prior is admissible in this instance."  However, Latsis didn't object or seek any other relief when the BAA allowed counsel to continue his comment.

[3] We use Kathryn Latsis's first name because she and Latsis share the same last name.  We mean no disrespect by doing so.

testimony being interrupted or curtailed, he doesn't explain what other testimony he would have elicited or how his inability to elicit such evidence prejudiced him.

- Latsis also contends that the BAA erred by improperly curtailing his cross-examination of Cordova. But as with Kathryn's testimony, he doesn't explain what further information he planned to draw out or how the lack of information affected the outcome of the proceeding.

- In a similar vein, Latsis argues that the BOE received four more minutes of hearing time than he did. But apart from a cursory allegation that this discrepancy violated his right to a fair hearing, he doesn't explain how allocating him an additional four minutes would have changed the result. *See People v. Gingles*, 2014 COA 163, ¶ 29 (an appellate court will decline to address issues when they are presented in a "cursory[] and undeveloped manner").

¶ 13 Finally, Latsis argues that the hearing was "impaired" due to the BAA members' alleged lack of engagement. We decline to address this argument because it is undeveloped. *Id.*

7

¶ 14 For these reasons, we perceive no reversible procedural or evidentiary errors.

## IV. Latsis's Property Valuation

### A. Applicable Law

¶ 15 Colorado law requires assessors to use the market approach when determining the "[a]ctual value" of residential real property for tax purposes. Colo. Const. art. X, § 20(8)(c) ("Actual value shall be stated on all property tax bills and valuation notices and, for residential real property, determined solely by the market approach to appraisal."); *see also* § 39-1-103(5)(a), C.R.S. 2025 ("The actual value of residential real property shall be determined solely by consideration of the market approach to appraisal.").

¶ 16 "'Actual value' is synonymous with market value." *Sampson,* 105 P.3d at 203. "Market value has been described as 'what a willing buyer would pay a willing seller under normal economic conditions.' Thus, the market approach involves analyzing sales of comparable properties in the market." *Id.* (quoting *Bd. of Assessment Appeals v. Colo. Arlberg Club,* 762 P.2d 146, 151 (Colo. 1988)).

## B. Analysis

¶ 17 In reaching her valuation of $949,000, Cordova used standard appraisal methodology, and she complied with the statutory scheme for calculating property taxes. As part of her market approach evaluation, Cordova analyzed six comparable sales in proximity to Latsis's property. She testified that she accounted for Latsis's unfinished basement and the property's location near a busy highway and a church. Cordova additionally adjusted the sales price of the comparable properties to reflect market value as of the June 2022 appraisal date.

¶ 18 Latsis argues that the BAA erred by adopting Cordova's value for his property because (1) the BAA erroneously concluded that his property had four bedrooms instead of three; (2) Cordova didn't consider the light pollution emitted by the nearby church; (3) four of Cordova's comparable sales were faulty because they were dissimilar to Latsis's residence — a single-story, ranch-style, noncustom home; and (4) the "A" grade Cordova assigned to the property didn't accurately reflect the property's actual quality.

¶ 19 First, while we agree that the BAA erred by stating that Latsis's property had four bedrooms, the error appears to have been

a typo and is harmless.  *See EchoStar Satellite, L.L.C. v. Arapahoe Cnty. Bd. of Equalization*, 171 P.3d 633, 637-38 (Colo. App. 2007) (the BAA's error in excluding evidence was harmless because the exclusion did not prejudice the taxpayer).  The record shows that Cordova's appraised value was based on Latsis's residence having only three bedrooms.

¶ 20      Latsis's three remaining arguments essentially ask us to reweigh the evidence presented at the hearing or reassess Cordova's credibility.  But determinations regarding witness credibility, the weight of the evidence, and the resolution of evidentiary conflicts are the BAA's sole province.  *Sampson*, 105 P.3d at 208; *Gyurman*, 851 P.2d at 310.  And because the BAA's valuation is amply supported by Cordova's testimony and her appraisal report, we cannot disturb it.  *See Sampson*, 105 P.3d at 208.

## V.    Disposition

¶ 21      The agency order is affirmed.

JUDGE J. JONES and JUDGE MEIRINK concur.